IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAROL PEEL | § | |
| | § | |
| VS. | § | CA No. _____ |
| | § | |
| UNUM LIFE INSURANCE | § | |
| COMPANY OF AMERICA and | § | |
| HIGGINBOTHAM INSURANCE | § | |
| AGENCY, INC. PLAN | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

CAROL PEEL, Plaintiff, files this Original Complaint asserting causes of action in law and equity for relief against The Prudential Insurance Company of America and Higginbotham Insurance Agency, Inc. Plan, Defendants.

**I.
PARTIES**

1. Plaintiff, Carol Peel ("Peel"), is a resident citizen of Missouri City, Texas.

2. Defendant, UNUM Life Insurance Company of America ("Unum"), is a domestic or foreign company licensed to do business and doing business in the state of Texas. It can be served with process by serving its registered agent, Corporation Service Company, 211 East 7th St., Suite 620, Austin, TX 78701-3218, or wherever it may be found.

3. Higginbotham Insurance Agency, Inc. Plan ("Plan") is an employee welfare benefit plan of Higginbotham Insurance Agency, Inc ("Higginbotham"). Higginbotham is the Plan Sponsor and Plan Administrator. The Plan may be served by serving

Higginbotham Insurance Agency, Inc., 500 W 13th St., Suite 250, Fort Worth, Texas, 76102, or wherever it may be found.

## II.
## JURISDICTION AND VENUE

4. This action against Unum and the Plan arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq*. This Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1).

5. Venue is proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2) because Defendants maintain business activity in and may be found in this district.

6. Pursuant to 29 U.S.C. §1132(h), this Complaint has been served upon the Secretary of Labor, Pension and Welfare Benefits Administration at 200 Constitution Avenue N.W., Washington, D.C. 20210 and the Secretary of the Treasury at 111 Constitution Avenue N.W., Washington, D.C. 20024, by certified mail return receipt requested.

## III.
## STATEMENT OF FACTS

7. Thomas D. Peel was an employee of Higginbotham. As a full time employee, he enrolled in the company's Accidental Death and Dismemberment insurance program ("AD&D").

8. The AD&D insurance was part of the company's Group Insurance Policy issued by Unum. The Group AD&D Policy Number was 94871 (the "Policy"). The Policy provided insurance benefits in the event of the insured's accidental death.

9. Unum represented that it would pay Policy benefits for an "accidental bodily injury" that led to a loss of life or the accidental death of the insured. The Policy included definitions, presumably to assist the insured in understanding its terms. "Accidental

bodily injury" was defined as "bodily harm caused solely by external, violent, and accidental means and not contributed to by any other cause."

10. The Policy defined "Injury" as a "bodily injury that is the direct result of an accident and not related to any other cause". "Sickness" was defined as "an illness or disease".

11. The Policy excluded certain losses from coverage. Among others, it excluded any accidental losses "caused by, contributed to by, or resulting from disease of the body".

12. On December 17, 2013, Thomas was involved in a motorcycle accident. Among other things, he broke four ribs and suffered several road rash burns on his back. He was rushed to St. Luke's Hospital in Sugar Land.

13. Thomas died while at St. Luke's Hospital on December 19, 2013.

14. An autopsy was performed the next day. Thomas' cause of death was originally determined to be the result of systemic hypertension. The manner of death was originally determined to be natural.

15. Thomas' wife, Carol Peel, was the designated beneficiary under the Policy.

16. On or about January 27, 2014, Ms. Peel submitted an application for AD&D benefits to Unum initiating a claim on the Policy.

17. On March 15, 2014, Unum denied the claim. In denying the claim, Unum concluded that Mr. Peel's death was not the result of bodily harm caused solely by external, violent, and accidental means.

18. Over the next few weeks, Unum requested the medical examiner's report and the amended death certificate.

19. In denying the claim, Unum employee Marnie Webb reviewed the autopsy report.

She concluded that Mr. Peel's death, "within a reasonable degree of medical certainty", was caused by systemic hypertension, a disease of the body.

20. However, Ms. Webb lacked the training, education, or experience to make any of those conclusions. She is a registered nurse licensed in the State of Maine. She does not have a nursing license in Texas. She is not competent to opine on cause of death. She was prohibited by law from making precisely the kinds of medical diagnoses that she made and upon which Unum relied in denying the claim. Unum knew or should have known of this legal infirmity but nevertheless persisted in its reliance on Webb's unqualified opinion.

21. Ms. Peel promptly appealed Unum's denial of the claim. As part of her appeal, she submitted an amended death certificate stating that blunt force trauma from Mr. Peel's motorcycle accident was a significant condition contributing to his death. The amended death certificate noted that the manner of death was "accidental".

22. On July 17, 2014, Unum denied Ms. Peel's appeal. In doing so, Unum repeated its contention that Mr. Peel's immediate cause of death was systemic hypertension.

23. On July 31, 2015, Ms. Peel submitted to Unum documents evidencing Unum's motive and financial incentives to deny her claim.

24. On August 3, 2015, Ms. Peel submitted to Unum documents relating to three (3) other AD&D policies owned by her husband at the time of his death. These three insurers, American Heritage Life Insurance Company, Globe Life and Accident Insurance Company, and Transamerica Life Insurance Company, fully paid the claims submitted by Ms. Peel.

25. The AD&D policies from American Heritage, Globe Life, and Transamerica

contained policy language similar to what Unum relied on in denying Ms. Peel's claim. The American Heritage policy defined an accidental death as "unexpected traumatic damage caused to insured's body, of external origin". The Globe Life policy defined accidental death as "unexpected traumatic damage caused to insured's body, of external origin". The Transamerica policy defined accidental death as death resulting "directly and independently of all other causes from "an accidental bodily injury, provided that death occurs within 90 days".

26. On August 19, 2015, Unum stated the documents submitted by Ms. Peel on July 31 and August 3 were "not relevant to the claims decision and will not be reviewed". Unum also contended that "they are not part of your administrative record".

27. Unum's failure to review or consider the supplemental documents provided by Ms. Peel on July 31, 2015 and August 3, 2015 violated the Fifth Circuit's holding in *Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287 (5th Cir. 1999). It also violated Unum's fiduciary duty to Ms. Peel.

28. Having exhausted her administrative remedies, Carol Peel brings this action to recover the accidental death benefits promised in the Policy and the Plan.

## IV.
## CLAIMS & CAUSE OF ACTION

29. Unum is an insurer and provided AD&D coverage to Mr. Peel in accordance with the terms of the Policy. That coverage included accidental death benefits arising out of his accidental death. Carol Peel was the beneficiary of the Policy.

30. The Policy, as part of the Higginbotham Insurance Agency, Inc. Plan, is governed by ERISA. 29 U.S.C. §1001, *et. seq*. Unum is the Claims Administrator and a named fiduciary under the Plan.

31. As a Plan fiduciary, Unum is obligated to handle claims for the benefit of the Plan and Plan beneficiaries, and to deliver the benefits promised in the Plan. It is also obligated as a fiduciary to conduct its investigation of a claim in a fair, objective and evenhanded manner.

32. Unum's adjustment or "adjudication" of the Peel claim was instead biased and outcome oriented. This was in part reflected by its repeated denial of the Peel claim, even after being presented with evidence that systemic hypertension, in and of itself, could not be an immediate cause of death. It was also reflected in Unum's ignoring undisputed evidence of the absence of any discernable hypertension immediately shortly before the insured's death.

33. Unum's interpretation of the Policy and the terms of the Policy was not legally correct. It was also contrary to a plain reading of the Policy language.

34. Unum's interpretation of "injury" was unreasonable, contrary to the plain and ordinary meaning of that term, and contrary to the Policy definition. Unum's interpretation of "bodily injury that... is not related to any other cause" was global, broad, and expansive such that it would nullify coverage in almost every instance in which the ordinary insured would reasonably expect coverage.

35. Unum's interpretation of the Policy and Policy language was contrary to that of the average Plan participant and policyholder. It was contrary to the common and ordinary usage of the Policy terms. Alternatively, the Policy language upon which Unum based its denial decision was ambiguous. The ambiguous nature of those terms require those terms be construed against Unum and in favor of coverage for the beneficiary.

36. Unum's denial was made without substantial supporting evidence. Its decision to deny the Peel claim was instead based upon rank speculation and guesswork. Unum's denial decision was *de novo* wrong. Alternatively, it was arbitrary and capricious.

37. On information and belief, Unum's denial of the Peel claim was not the result of a honest, fair, or objective factual investigation. It was instead motivated by Unum's desire for financial gain evidenced by policies, procedures, and practices to profit from the delay in payment or denial of claims. It may also be found in various incentive programs for claims personnel and in various management directives, such as the Performance Based Incentive plan Unum created in 2005. Its financial gain is also reflected in the high ROE Unum gains from retained benefit funds.

38. At all material times, Unum was acting on behalf of the Plan and in its own capacity as the insurer and Claims Administrator.

39. Unum's denial of the Peel claim breached the terms of the Policy and the Plan. Its breach was in violation of 29 U.S.C. §1132(a)(1), entitling Peel to the Policy benefit of $171,000 for the accidental death of her husband, along with pre-judgment interest on the amounts due and unpaid, all for which Carol Peel now sues.

## V.
## STANDARD OF REVIEW

40. The default standard of review for denial of a benefit claim is *de novo*. Where the Plan or Policy confers discretion on the Claims Administrator, an abuse of discretion standard of review may apply.

41. The Policy may contain a discretionary clause or language Unum may construe as affording it discretion to determine eligibility for benefits, to interpret the terms of

the Policy, and determine the facts. Unum's denial under this standard of review, if any, was an abuse of discretion. It was arbitrary and capricious.

42. If discretion applies, the Court should afford Unum less deference in light of its financial conflict of interest. Unum's conflict of interest is both structural and actual. Its structural conflict results from its dual role as the adjudicator of the Peel benefit claim and as the potential payor of that claim.

43. Unum's actual financial conflict is revealed in the policies, practices, and procedures influencing and motivating claim delays and denials for financial gain. In 2005, Unum created a Performance Based Incentive plan ("PBI"). The PBI, among other things, incentivized employees to prioritize profits over policyholders. The incentive program applied to almost all employees, including claims personnel. Unum set goals for claim terminations, liability acceptance rates, and then tied those goals to available bonuses. For employees to be eligible for bonuses under the PBI, Unum must have achieved a minimum level of financial performance.

44. Unum's managers were instructed to let employees know about the program so that they aligned their interests with the company. The more a unit contributed to Unum's overall profit goals, the greater the share of the bonus pool. Claims personnel were kept aware during the year whether the company met its financial goals. Unum's top down approach was evidenced by the creation of metrics to judge the performance of directors who oversee various claims departments. Depending on the employee's position, the bonuses ranged into the millions.

45. Because the pool of bonuses was relatively fixed, it also meant that if one unit received a bigger bonus, another group would receive a smaller bonus, or none at all.

This naturally led to a "race to the bottom", as different units competed to deny as many claims as possible.

46. Evidence from publicly filed records reveals that Unum's PBI is still in effect.

47. Other publicly available Unum documents also evidence the company's emphasis on profit at the expense of unbiased claims review. One Unum employee testified that in house medical consultants are given a dollar target for their job in addition to the financial targets that are factored into the PBI. This is entirely consistent with the conduct of Marnie Webb, Unum's medical record reviewer in this claim.

48. Unum's financial conflict is also revealed in the high ROE gained from the delay in payment or denial of claims.

49. Each of these grounds, on information and belief, was a motive to deny the Peel claim, along with the delay in payment or denial of claims of other Unum policyholders and claimants.

50. Unum, in light of its financial conflict, should be accorded little or no discretion in its claims decision.

51. Alternatively, the standard of review of this claim should be *de novo,* affording Unum no discretion in its interpretation of the terms of the Policy and Plan, nor in its factual determinations.

52. The Policy was delivered in Texas. Accordingly, Texas law applies under the ERISA savings clause. Texas has banned the use of discretionary clauses in insurance policies issued in this state. TEX. INS. CODE §1701.062; 28 Tex. Admin. Code §3.1202. Accordingly, review of the Peel claim and Unum's claims handling conduct both in its interpretation of terms of the Policy and the Plan, and in its determination of the

facts, should be *de novo*.

## VI.
## REQUEST FOR PREJUDGMENT INTEREST & AN ACCOUNTING

53. Peel requests, in addition to the amount of benefits withheld, prejudgment interest on any such award. She is entitled to prejudgment interest as additional compensation, and pursuant to Texas Insurance Code Texas Insurance Code, Sec. 1103.104, or on principles of equity.

54. Unum's policy does not contain a rate of interest payable on the benefit amount wrongfully withheld. Resort must be had to Sec. 1103.104(c) of the Insurance Code. Peel thus requests an accounting in order to determine the amount earned on the funds that should have rightfully been paid to her, and in accordance with Insurance Code Sec. 1103.104(c).

## VII.
## CLAIM FOR ATTORNEYS FEES & COSTS

55. Peel seeks an award of her reasonable attorneys' fees incurred and to be incurred in the prosecution of this claim for benefits. She is entitled to recover those fees, together with her costs of court, pursuant to 29 U.S.C. §1132(g).

## VIII.
## PRAYER

56. Carol Peel, Plaintiff, respectfully prays that upon trial of this matter or other final disposition, this Court find in her favor and against Defendants UNUM Life Insurance Company of America and Higginbotham Insurance Agency, Inc. Plan, and issue judgment against each Defendant as follows:

   a. Pay to Ms. Peel all benefits due and owing in accordance with the terms of the Plan and Policy, as well as all prejudgment interest due thereon and as

      allowed by law and equitable principles;

b.     Pay all reasonable attorney's fees incurred and to be incurred by Ms. Peel in obtaining the relief sought herein, along with the costs associated with the prosecution of this matter;

c.     All such other relief, whether at law or in equity, to which Ms. Peel may show herself justly entitled.

                        Respectfully submitted,

By: __/s/_____
   James C. Plummer, TBA #16075700
   Federal I.D. No. 3692
   jplummer@plummerlawyers.com
   Amar Raval, TBA # 24046682
   S.D. I.D. No 619209
   araval@plummerlawyers.com
   **PLUMMER | RAVAL**
   4203 Montrose Boulevard, Suite 270
   Houston, Texas 77006
   (713) 522-2887
   (713) 522-3605 (Fax)

   ATTORNEYS FOR PLAINTIFF